**SYNTHETIC PATENTS CO., Inc., v. SUTHERLAND, Alien Property Custodian, et al.**

Circuit Court of Appeals, Second Circuit. November 14, 1927.

No. 24.

1. Payment ⬤⇒82(1)—Over payments voluntarily made, are not recoverable, unless made through fraud, duress, or mistake.

A party may not, by direct action, or by set-off or counterclaim, recover overpayments voluntarily made with full knowledge of the facts, without proof of fraud, duress, or mistake, though no obligation to make such payment exists.

2. War ⬤⇒12—Corporation held not entitled to recover overpayments on contracts to its only stockholders, there being no unpaid debts, and hence could not recover payments out of property seized by Alien Property Custodian.

Where American corporation made voluntary overpayments on certain contracts to nonresident aliens, who were its sole stockholders, held that, in view of fact that there were no unpaid debts, that no rights of other stockholders were impaired thereby, and that the stockholders were equitably entitled to corporation's profits in the form of dividends, corporation was not entitled to recover such over payments from stockholders, and therefore could not recover payments out of property seized by Alien Property Custodian, under Trading with the Enemy Act, § 9, as amended by Act June 5, 1920 (Comp. St. § 3115½e).

**3. Payment ⬦⟶85(1)—Voluntary payment under mistake of fact cannot be recovered on theory of implied promise to repay, if payee is equitably entitled to money.**

Voluntary payment, made through a mistake of fact, cannot be recovered on theory of implied promise to repay, where payee is equitably entitled to the money.

**4. Equity ⬦⟶409—Findings and conclusions of special master are not binding on court because reference was entered by consent.**

Findings of fact and conclusions of law by a special master are not binding on District Court, or on Circuit Court of Appeals, because order of reference was entered by consent.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Synthetic Patents Company, Inc., against Howard Sutherland, as Alien Property Custodian, and others. Decree for plaintiff and certain defendants appeal. Reversed.

Charles H. Tuttle, U. S. Atty., of New York City (Robert W. Bonynge, of New York City, of counsel), for appellants.

Lyttleton Fox and H. H. Ramsay, both of New York City, for appellee Synthetic Patents Co., Inc.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge. This is a suit brought by the appellee under the provisions of section 9 of the Trading with the Enemy Act, as amended by Act June 5, 1920 (Comp. St. § 3115½e). Duisberg, Hess, and Mann were nonresident German nationals, and owned all the capital stock of the appellee, as well as that of the Bayer Company, an American corporation. On January 15, 1918, the stock of both companies was seized by the Alien Property Custodian. It, together with the rights accruing under the terms of contracts made between Duisberg, Hess, and Mann and the appellee, were sold on December 12, 1919, to the Sterling Products Company, an American corporation. It has become the sole stockholder of the appellee. This suit is based upon the claim that there were overpayments by remittances made to Duisberg, Hess, and Mann for the years 1913, 1914, 1915, 1916, and 1917 out of the funds of the appellee. Duisberg, Hess, and Mann became entitled to certain moneys from the appellee, pursuant to a contract which provided that they should jointly receive 75 per cent. of all the moneys which the appellee received from any source for the right to use the patents, formulas, trade-

marks, and trade-names owned or controlled by the appellee, or in which the appellee had any interest; also another contract wherein it is provided that they receive from the appellee $1,000 each for any new patents or formulas growing out of them, or used or acquired by the appellee; also on account of interest on existing indebtedness owed by the appellee to them for money loaned. The complaint alleges that the appellee had overpaid Duisberg, Hess, and Mann sums of money therein set forth, and that such overpayments were to be absorbed by the credits to the account of Duisberg, Hess, and Mann thereafter to accrue, or "to serve as prepayment for goods, wares, and merchandise to be thereafter shipped by the three," and it is alleged that, pending this absorption or shipment, the sums constituted money had and received by the alien enemies to the use of the appellee. A decree pro confesso was entered against Duisberg, Hess, and Mann. The issues, together with the claim for taxes considered in No. 9577, 22 F.(2d) 491, decided this day, were referred to a special master, whose report, awarding a decree to the appellee, was confirmed by the District Judge.

[1] Without passing upon the sufficiency of the proof, which is here contested, as to whether there were, in point of fact, overpayments made, and accepting the findings of the master that they were made, it is apparent that such remittances were voluntary payments. There was no allegation in the complaint, nor is there evidence in the record to support a claim that such payments were made through mistake, fraud, or duress. The claim is that the overpayments were made by the appellee, and from that it was concluded that they constituted money had and received for the benefit of the appellee. Overpayments voluntarily made are not recoverable. It must be shown that they were made through a mistake of fact, fraud, or duress. A party may not, by direct action or by way of set-off or counterclaim, recover money voluntarily paid with the full knowledge of all the facts, without proof of fraud, duress, or mistake, although no obligation to make such payment exists. United States v. Barlow, 132 U. S. 272, 10 S. Ct. 77, 33 L. Ed. 346; Detroit Edison Co. v. Wyatt Coal Co. (C. C. A.) 293 F. 489; Cleveland & Western Coal Co. v. Main Island Creek Coal Co. (C. C. A.) 297 F. 60; Payne v. Witherbee Sherman & Co., 200 N. Y. 572, 93 N. E. 954.

In Lamborn v. County Commissioners, 97 U. S. 181, 24 L. Ed. 926, a contract for the purchase of lands provided that the purchaser should pay all taxes lawfully assessed,

and the seller would convey them upon the payment of purchase money. The taxes for a year prior to the sale were held to be valid, and, not having been paid, the county treasurer advertised and sold the lands, the county bidding in the property. Later a trustee and representative of the purchaser, relying upon the validity of the tax, paid the same, without protest, to the county treasurer, out of the moneys belonging to the purchaser, and he received a tax certificate therefor, which he took in his own name. The statute provided that the nonredemption of lands within three years from the date of the sale permitted the treasurer, on presentation of the certificate, to execute a deed to the purchaser or refund the amount paid therefor, if he discovered for any reason that there was an error or irregularity, and that the lands ought not to be conveyed. The court decided that the lands were not taxable, and the purchaser, at the tax sale, offered to return the tax certificate to the county treasurer, and demanded that the moneys paid by him be refunded. The court held that payments made by the agent, who could not be regarded as a purchaser, not having been made through fraud, or mistake of fact, or duress, were voluntary, and would defeat his action, and said:

"Mistake, in order to be a ground of recovery, must be a mistake of fact, and not of law. * * * A voluntary payment, made with a full knowledge of all the facts and circumstances of the case, though made under a mistaken view of the law, cannot be revoked, and the money so paid cannot be recovered back."

The indebtedness of Duisberg, Hess, and Mann to the appellee is sought to be proven by the book entries of the appellee company and inferences which are drawn from the contractual relations between the parties. There is no proof in the record showing other than a voluntary payment. Indeed, it is not contended that fraud or duress was practiced, nor was there a mistake of fact. The law, therefore, did not raise an implied promise to pay such overpayments, if they were made.

[2] It also appears that Duisberg, Hess, and Mann were the only stockholders of the appellee, and, both by reason of such stock ownership and the contractual relations referred to above, they were equitably entitled to the earnings of the corporation. It is conceded that the corporation owed no other creditors, and the payments made to them were out of the profits and surplus. This is established by the books of the appellee. The master found:

"That the evidence shows that substantially all the profits of the plaintiff company over and above its just debts and expenses were paid each year during the years 1913–1917 to Duisberg, Hess, and Mann, the owners of the entire capital stock of the company."

And further:

"That the plaintiff company, although an exceedingly prosperous company and making large profits during the years 1913–1917, inclusive, declared only one dividend during said years, and that in 1916, and in the sum of three thousand ($3,000) dollars only."

[3] Since the moneys paid were out of the profits and surplus, Duisberg, Hess, and Mann, under the contractual relationship, were entitled to 75 per cent. of the receipts of the company for each year after payment of the liabilities and expenses for the year, and as sole stockholders they were entitled to be paid as dividends, when declared from the balance of the surplus. Since it appears that the appellee paid all its debts before the payments were made to Duisberg, Hess, and Mann, such payments came from the surplus of the company, as the master found. The fact that the payments were entered on the books of the company as made on the contract would not affect the rights which Duisberg, Hess, and Mann had, as stockholders, to payment of the profits in the form of dividends. If money had been paid through a mistake of fact, as the cases hold, the payee nevertheless, if equitably entitled to the money, is charged with no implied promise to repay the same for such promise does not arise. The basis of the claim of money had and received is founded upon an implied promise to repay. In view of the fact that there were no unpaid debts, and no rights of other stockholders were impaired, this corporation's profits paid to the stockholders, even without a declaration of dividends, may not be recovered by the corporation. Spencer v. Lowe (C. C. A.) 198 F. 961; Hartley v. Pioneer Works, 181 N. Y. 73, 73 N. E. 576; Fitchett v. Murphy, 46 App. Div. 181, 61 N. Y. S. 182; People's Trust Co. v. O'Meara, 204 App. Div. 268, 197 N. Y. S. 795.

On June 28, 1918, the board of directors passed a resolution, which was later canceled, and by this resolution $229,985.45, the surplus earnings of the company for the year 1917, were passed to the credit of Duisberg, Hess, and Mann. After the sale of the stock

to the Sterling Products Company, and shortly before the stock was actually transferred to the Sterling Products Company, the resolution was canceled. It would appear that this resolution, as originally passed, showed a distribution of the profits among the stockholders. After the sale of the stock, cancellation increased the claimed indebtedness of Duisberg, Hess, and Mann to the amount of the credit given under the original resolution. The sale by the Alien Property Custodian was made on December 19, 1919, when the resolution was in full force and effect. This resolution by the stockholders, at the time it was passed, clearly indicated that it was the intent of the appellee's managing board that the remittances of the entire profits of the company, after payment of its debts, was to be made to the only stockholders of the company, and the distribution of these earnings, either under the contract or stockholder obligation, was to those entitled to receive them, even though it lacked the formality of a declaration of dividends. In any event, it established a voluntary payment, free from mistake of fact, fraud, or duress, and may not be recovered by the corporation.

[4] The claim that, because the order of reference was entered by consent, the findings of fact and conclusions of law by the special master are binding upon the District Court, or this court, is erroneous. Davis v. Schwartz, 155 U. S. 636, 15 S. Ct. 237, 39 L. Ed. 289; Budd Mfg. Co. v. Wilson Body Co. (D. C.) 7 F.(2d) 746. The suit is in equity, and under rule 22 of this court the requirement that the specification of errors should state as particularly as may be in what the decree or order is alleged to be erroneous has been sufficiently complied with.

Decree reversed.